UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

THE GULF AND MISSISSIPPI RIVER
TRANSPORTATION COMPANY, LTD

CIVIL ACTION

VERSUS

NO. 10-256-JJB-DLD

BP OIL COMPANY AND CHEVRON
OIL COMPANY

## RULING ON PLAINTIFF'S AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on three separate motions for summary judgment. Defendants BP Oil Pipeline Co. ("BP") and Chevron Oil Co. ("Chevron") have each filed Motions for Summary Judgment (docs. 28 & 29, respectively). Plaintiff The Gulf and Mississippi River Transportation Co. Ltd. ("G&M") has filed oppositions (docs. 38 & 39), to which Defendants have filed a joint reply (doc. 45). G&M has filed a Motion (doc. 40) for Partial Summary Judgment to which BP has filed an opposition (doc. 49). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332.

### Background

I. Facts

This case arises out of the alleged trespass and failure to account for profits resulting from the operation of a pumping station on Grand Terre Island ("the Island"). The following facts are undisputed. In 1957, G&M acquired a 1/5 interest in a 5.19-acre tract ("the Tract") on the Island as part of a Compromise and Partition Agreement (doc. 40-1, ¶ 7). On June 24, 1960, Gulf Refining Co.

1

("Gulf"), Chevron's corporate predecessor, acquired a servitude ("the Servitude"), which was located on the Tract, from the Island's various landowners for the purpose of constructing and operating a pumping station (doc. 28, ex. 1). The Servitude was granted for a term of twenty years and expired on June 24, 1980 (doc. 28, ex. 1). However, after the Servitude's expiration, Gulf continued to operate the pumping station. On September 24, 1980, Gulf filed suit to expropriate a Right of Way to ensure its continued use of the pumping station (doc. 28, ex. 2). G&M was named in the suit, was served on September 25, 1980, but failed to file any responsive pleadings or discovery materials (doc. 28, ex. 3; ex. 4, ¶¶ 7 & 9; ex. 5). However, Gulf did not prosecute the suit to judgment, allegedly due to difficulties in locating and serving the potential defendants (doc. 28, p. 3).

On September 1, 1986, during the pendency of the suit, Chevron sold its interest in the pumping station to Sohio Pipeline Co. ("Sohio"), BP's corporate predecessor (doc. 28, ex. 6). On October 11, 1988, Chevron purchased an undivided 1/8 of 3/25 (0.015) fee interest in the Tract from Texaco Producing Inc., which it then sold to Sohio/BP on November 23, 1988 (doc. 28, exs. 7 & 8). On June 30, 2006, BP sold its interest in the pumping station and the Tract to Plains Pipeline, L.P. ("Plains") (doc. 1, p. 4, ¶ 3). At present, BP has neither paid G&M its alleged co-owner's share of the "fruits and products" that BP derived from operating the pumping station from November 23, 1988 to June 30, 2006

nor provided any documentation of the "fruits and products" that it derived during that time period (doc. 40-1, ¶ 5).

**II. Procedu ral History**

On April 15, 2010, G&M filed suit against Chevron and BP (doc. 1). G&M asserts that it owns an undivided 1/5 interest in the Island and that (1) Chevron's and BP's operation of the pumping station from June 24, 1980 until August 12, 2009 constituted a single continuing trespass; and (2) that BP owes it income, revenue and profits from the period in which BP co-owned the pumping station with G&M (doc. 1).

On February 9, 2011, BP and Chevron filed Motions (docs. 28 & 29, respectively) for Summary Judgment. Defendants assert that Plaintiff has no trespass claim because those claims began to run when BP and Chevron became co-owners of the property—November 23, 1988 and October 11, 1988, respectively—and have thus prescribed. On March 2, 2011, Plaintiff filed its Motions (docs. 38 and 39) in Opposition. Plaintiff asserts that Defendants possessed the pumping station in bad faith from June 24, 1980—the date the original Servitude expired—until August 12, 2009—the date that Plaintiff released Plains from any liability for future operation of the pumping station (docs. 38 & 39). In reply, Defendants assert that Plaintiff improperly equates a bad faith possessor with a trespasser, and that Plaintiff has no claim for trespass against Defendants (doc. 45).

On March 2, 2011, Plaintiff filed its Motion (doc. 40) for Partial Summary Judgment. Plaintiff asserts that it and BP co-owned the pumping station from November 23, 1988 until June 30, 2006 and that BP has neither paid Plaintiff its co-owner's share nor provided documentation of the "fruits and products" that BP derived from its operation of the pumping station during that time.

BP alleges that (1) Plaintiff's possible recovery is limited to the value of the servitude by the *St. Julien* Doctrine, and Plaintiff's claim thereunder has nonetheless prescribed; (2) Plaintiff is entitled to, at most, revenue deriving from co-ownership of the tract, not the pumping facility; and (3) there are genuine issues of material fact as to whether BP acquired the tract through acquisitive prescription (doc. 49).

## Standard of Review

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant has the burden of proof at trial, it must demonstrate the absence of material facts and entitlement to judgment as a matter of law. *Id.* at 321. If the movant does so, the burden

shifts to the nonmovant to show, by affidavit or otherwise, that a genuine issue of material fact remains for the factfinder to resolve. *Id.* at 323.

## Analysis

### I. Trespass

Defendants assert that Plaintiff's claim must be dismissed as to the period from 1980 to 1988 because, despite that they had no legal interest in the Tract, and admittedly were trespassing during that time, Plaintiff's claims have long since prescribed (docs. 28 & 29). Defendants assert that because Plaintiff was named and served in Gulf's 1980 expropriation suit, it had notice of the violation and failed to take timely legal action (docs. 28 & 29). In addition, Defendants assert that their status as trespassers legally ended in 1988 when Chevron purchased a 0.015 undivided interest in the Tract, and thereby became a co-owner in indivision (docs. 28 & 29). In addition, Defendants assert that Plaintiff's trespass claim must be dismissed because there is no solidary liability among Chevron, BP and Plains (docs. 28 & 29).

Plaintiff asserts that Defendants possessed the pumping station in bad faith and that this act constitutes a tort under Louisiana Civil Code article 2315 (docs. 38 & 39). In addition, Plaintiff asserts that Defendants' conduct constitutes a continuing tort, and, therefore its claims against Defendants have not prescribed (docs. 38 & 39). In reply, Defendants assert that Plaintiff improperly equates a bad faith possessor with a trespasser, and that Plaintiff has no claim for trespass against Defendants (doc. 45).

Under Louisiana law, a trespass occurs when there is an unlawful physical invasion of the property or possession of *another* person. *LaCombe v. Carter*, 975 So. 2d 687, 689 (La. Ct. App. 3d Cir 2008) (emphasis added). Moreover, under Louisiana law, co-owners are each entitled to use and occupy the jointly held property—that is, a co-owner cannot legally trespass on the co-owned property.[1] In addition, under Louisiana tort law, a claim for trespass prescribes one year after the plaintiff knew or should have known of the cause of action. La. Civ. Code arts. 3492-93; *Renfroe v. State Dep't of Transp. & Dev.*, 809 So. 2d 947, 953 (La. 2002).

If a course of conduct, rather than a single act or discrete acts, cause damage, the conduct may constitute a "continuous tort." In such cases, the continuing and repeated wrongful acts are treated as a single wrong, rather than

---

[1] La. Civ. Code. art. 797; *Spencer v. Spencer*, 273 So. 2d 605, 607 (La. Ct. App. 4th Cir. 1973). *See also Sullivan v. Wallace*, 51 So. 3d 702, 708-10 (La. 2010) (stating that the timber trespass statute does not apply to co-owners). Moreover:

> In determining the amount due and recoverable by a co-owner out of possession from his co-owner in possession, a clear distinction should be drawn between the personal occupancy, use and enjoyment of property by the possessor and the rents and revenues derived by him therefrom. . . . As to the latter, he must account to his co-owner for all rents and revenues he has received. . . . On the other hand, the co-owner who takes possession of the common property does not have to account to his coproprietor, because the right of occupancy is vested in him by virtue of his ownership. This right of co-owners to possession of the property being equal and coextensive, neither becomes indebted to the other for his personal occupancy and enjoyment, save, probably, that a co-owner, who has been deprived of the right of possession by reason of his co-owner's exclusive occupancy, may claim damages from the date upon which he has demanded occupancy and has been refused by the possessor.

*Juneau v. Laborde*, 82 So. 2d 693, 695-96 (La. 1955).

a series of successive actions, and prescription begins to accrue on the date of the last wrongful act. *Wilson v. Hartzman*, 373 So. 2d 204, 206-07 (La. Ct. App. 4th Cir. 1979). However, for the continuing tort doctrine to apply, there must be continuous *tortious* activity and continuous damage; if the tortious conduct ceases, whether or not the resulting damage ceases, the continuing tort doctrine does not apply. *Crump v. Sabine River Auth.*, 737 So. 2d 720, 728 (La. 1999).

The Court finds that there are no genuine issues of material fact. Following the expiration of its Servitude on June 24, 1980, Gulf/Chevron continuously operated the pumping station despite that it had no ownership interest in or right to use any part of the Tract (doc. 28, ex. 1). G&M was aware of this use insofar as it was named as a party and served in Gulf/Chevron's expropriation suit (doc. 28, ex. 3; ex. 4, ¶¶ 7 & 9; ex. 5 ). However, on October 11, 1988, Chevron purchased a 0.015 undivided interest in the Tract, which it later sold to Sohio/BP (doc. 28, exs. 7 & 8). As of October 11, 1988, Chevron, and later BP, as co-owners, ceased to be trespassers.

The Court also finds that Defendants are entitled to judgment as a matter of law. Though Defendants' conduct after the expiration of the Servitude and prior to obtaining ownership interests in the Tract arguably constituted a trespass, *see LaCombe*, 975 So. 2d at 689, once Chevron purchased an undivided interest in the Tract, it and its successors ceased to be trespassers. La. Civ. Code. art. 797; *Spencer*, 273 So. 2d at 607. Thus, the last tortious activity occurred on October 11, 1988, and so prescription commenced on that

7

date, and Plaintiff's claim prescribed one year thereafter. La. Civ. Code arts. 3492-93; *Crump*, 737 So. 2d at 728. As such, Plaintiff's trespass claims against Defendants have long since prescribed. Therefore, the Court will GRANT Defendants BP's and Chevron's Motions (doc. 28 & 29, respectively) as to Plaintiff's trespass claims.

## II. A ccounting Claim

Plaintiff asserts that (1) it and BP were co-owners of the Tract on which the pumping station is located; (2) because Gulf did not remove the pumping station within ninety days of the expiration of the Servitude, it became the property of the Tract's owners, including Plaintiff; (3) BP exclusively operated the pumping station from November 23, 1988 to June 30, 2006; and (4) BP has neither paid G&M its co-owner's share nor provided documentation of the "fruits and products" that BP derived during that time. Plaintiff claims that it is entitled to an accounting for the period as a co-owner.

BP alleges that (1) Plaintiff's possible recovery is limited to the value of the servitude by the *St. Julien* Doctrine, and Plaintiff's claim thereunder has nonetheless prescribed; (2) Plaintiff is entitled to, at most, revenue deriving from co-ownership of the tract, not the pumping facility; and (3) there are genuine issues of material fact as to whether BP acquired the tract through acquisitive prescription (doc. 49).

Under Louisiana law, an individual can acquire ownership of an immovable by (1) corporeally possessing (2) in good faith (3) for ten years (4) a thing susceptible of acquisition by prescription. La. Civ. Code art. 3475.

The Court finds that there are a myriad of genuine issues of material fact pertaining to each of BP's claims and defenses. By way of example, questions remain as to whether BP's operation of the pumping station provided the notice necessary for BP to obtain ownership of the tract through acquisitive prescription. Moreover, questions remain as to whether BP's acquiring title to the pumping station during the pendency of Chevron's expropriation suit rendered its operation of the facility in "good faith," or whether the title was "just." Because genuine issues of material fact exist as to each of BP's claims and defenses, the Court will DENY G&M's Motion (doc. 40) for partial summary judgment.

## CONCLUSION

Accordingly, the Court hereby GRANTS Defendants BP's and Chevron's Motions (doc. 28 & 29, respectively) for Summary Judgment as to Plaintiff's trespass claims. In addition, the Court hereby DENIES Plaintiff G&M's Motion (doc. 40) for Partial Summary Judgment as to its accounting claim.

Signed in Baton Rouge, LA on this 7th day of April, 2011.

HONORABLE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA